# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

**CHRISTOPHER A. GRIFFIN** and
**LEONOR GRIFFIN,**

        Plaintiffs,

          No. 2:13-cv-10002

vs.                               Hon. Gerald E. Rosen

**JPMORGAN CHASE BANK, N.A.,**
**UNKNOWN TRUSTEE,** as the Trustee of the
asset-backed security in which the loan at issue
was pooled; and **UNKNOWN TRUST,** the
unknown asset-backed security in which the loan
was pooled,

        Defendants.
_____/

## OPINION AND ORDER GRANTING DEFENDANT'S MOTION TO DISMISS

### I. INTRODUCTION

Plaintiffs Christopher and Leonor Griffin filed this home foreclosure case in Wayne County Circuit Court on December 19, 2012. Their two-count Amended Complaint challenges the foreclosure proceedings and asserts violations of Michigan's Regulation of Collection Practices Act. Currently before the Court is Defendant's Motion to Dismiss Plaintiffs' First Amended Complaint. Having reviewed and considered Defendant's Motion and supporting briefs, Plaintiffs' response thereto, and the entire record of this matter, the Court has determined that

1

the relevant allegations, facts, and legal arguments are adequately presented in these written submissions, and that oral argument would not aid the decisional process.  Therefore, the Court will decide this matter "on the briefs."  See Eastern District of Michigan Local Rule 7.1(f)(2).  This Opinion and Order sets forth the Court's ruling.

## II. FACTUAL BACKGROUND

On June 15, 2006, Plaintiffs granted Chase Home Finance a mortgage (Mortgage) to secure a $302,400.00 loan used to finance the purchase their home (the Property) in Allen Park, Michigan.  (Plfs' Am. Compl., Dkt. # 14, at ¶ 9; Ex. A to Plfs' Am. Compl., Dkt. # 14-1).  The Mortgage was duly recorded in the Wayne County Register of Deeds.  (Plfs' Am. Compl., Dkt. # 14, at ¶ 9).  Chase Home Finance subsequently merged into Chase.  (*Id.*).

Unfortunately, Plaintiffs "began suffering economic hardship" and eventually defaulted on their Mortgage.  (*Id.* at ¶ 10).  Chase began foreclosure proceedings, providing Plaintiffs with the requisite notice pursuant to M.C.L. § 600.3205a.  (Ex. B to Plfs' Am. Compl., Dkt. # 14-1, at 24).  The Wayne County Sheriff subsequently conducted a sheriff's sale on October 5, 2011,[1] with non-party Federal Home Loan Mortgage Corporation (Freddie Mac) purchasing the Property.

---

[1] Plaintiffs' Amended Complaint mistakenly asserts that this date was October 5, *2012*, but the documents attached to their Amended Complaint confirm that this occurred in *2011*.

(*Id.* at ¶ 18; Ex. B to Plfs' Am. Compl., Dkt. # 14-2).  The redemption period expired on April 5, 2012, nearly eight months before Plaintiffs filed this lawsuit. (Plfs' Am. Compl., Dkt. # 14, at ¶ 21).

Prior to the foreclosure proceedings, Plaintiffs retained Nationwide Consulting Group, LLC (through its President, Kenneth Sandoval) in an effort to maintain possession of their home.  (*Id*. at ¶¶ 14-16).  In short, Sandoval was to help Plaintiffs settle their outstanding Mortgage and purchase the Property outright before the sheriff's sale.  (*Id.*).  Sadly, Sandoval did not do this; he scammed Plaintiffs out of over $100,000 and did not save their home from foreclosure.  (*Id.* at ¶¶ 17, 25, 34).

On April 4, 2012, the day before the redemption period expired, Sandoval instructed Plaintiffs "to wait until after the redemption period expired" before purchasing the Property and settling their Mortgage.  (*Id.* at ¶ 21).  Plaintiffs followed this advice in lieu of pursuing other options.  (*Id.* at ¶ 21, 35, 36).  In June 2012 (after Freddie Mac had purchased the Property), Sandoval represented to Plaintiffs that he "had successfully negotiated a settlement."  (*Id.* at ¶ 22).  Plaintiffs were to pay $126,800 to Freddie Mac in exchange for outright, unencumbered ownership of the Property.  (*Id.* at ¶ 23).  Sandoval later informed Plaintiffs that he had secured "a more favorable deal," reducing the settlement amount to $114,059.  (*Id.* at ¶ 24).  Plaintiffs then wired this amount to Sandoval to

3

complete this deal.  (*Id.* at ¶ 25).  There was, however, no such deal.  Sandoval had not contacted Freddie Mac, Real Estate One (Freddie Mac's real estate broker), or Chase in June 2012, and all Sandoval did for Plaintiffs was to take and keep their money.  (*Id.* at ¶¶ 28, 34).[2]

After Freddie Mac filed an eviction action in state court (*Id.* at ¶¶ 31-32), Plaintiffs filed this lawsuit against Chase.[3]  They assert violations of Michigan's foreclosure by advertisement statute and Michigan's Regulation of Collection Practices Act.  Plaintiffs do not assert any claim in this lawsuit against Sandoval or Nationwide Consulting Group.  For the reasons set forth below, the Court finds Plaintiffs' claims to be without merit and dismisses Plaintiffs' Amended Complaint with prejudice.

### III. DISCUSSION

**A.**  **Rule 12 Standard**

In deciding a motion brought under Rule 12(b)(6), the Court must construe the complaint in the light most favorable to Plaintiffs and accept all well-pled factual allegations as true.  *League of United Latin Am. Citizens v. Bredesen*, 500

---

[2]  Sandoval subsequently offered Real Estate One $117,000 and $189,000 in October and December 2012, respectively.  Freddie Mac, through Real Estate One, rejected these offers.  (*Id.* at ¶¶ 29-30).

[3]  Plaintiffs also name two unknown parties, the "Unknown Trustee" as the "Trustee of the asset-backed security in which the loan at issue was pooled," and the "Unknown Trust," as "the unknown asset-backed security in which the loan was pooled."

F.3d 523, 527 (6th Cir. 2007). To withstand a motion to dismiss, however, a complaint "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The factual allegations in the complaint, accepted as true, "must be enough to raise a right to relief above the speculative level," and must "state a claim to relief that is plausible on its face." *Id.* at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility of an inference depends on a host of considerations, including common sense and the strength of competing explanations for defendant's conduct." *16630 Southfield Ltd. P'ship v. Flagstar Bank, F.S.B.*, 727 F.3d 502, 504 (6th Cir. 2013).

The Sixth Circuit has emphasized that the "combined effect of *Twombly* and *Iqbal* [is to] require [a] plaintiff to have a greater knowledge . . . of factual details in order to draft a 'plausible complaint.'" *New Albany Tractor, Inc. v. Louisville Tractor, Inc.*, 650 F.3d 1046, 1051 (6th Cir. 2011) (citation omitted). Put another way, complaints must contain "plausible statements as to when, where, in what or by whom," *Center for Bio-Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365, 373 (6th Cir. 2011), in order to avoid merely pleading an "unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678.

5

**B.      Plaintiffs' claims are without merit**

**1.      Count I -- Wrongful Foreclosure**

Plaintiffs first assert that the foreclosure is void because it lacked a proper record chain of title in violation of Michigan's foreclosure by advertisement statute, M.C.L. § 600.3204 *et seq*.   As Defendant correctly notes, however, Plaintiffs no longer possess any interest in the Property and therefore lack standing to challenge the foreclosure proceedings.      Under Michigan constitutional jurisprudence, a party asserting the violation of a statute may have constitutional standing to assert a claim yet lack *statutory* standing to do so.   "That is, a party that has constitutional standing may be precluded from enforcing a statutory provision, if the Legislature so provides."   *Miller v. Allstate Ins. Co*., 481 Mich. 601, 607 (2008).   To determine if statutory standing exists, the question must be asked whether the Legislature "has accorded this injured plaintiff the right to sue the defendant to redress his injury."   *Id.* (citation omitted).   This inquiry "simply [entails] statutory interpretation." *Id.*

While Michigan's foreclosure by advertisement statutory scheme provides certain steps that the mortgagee must go through to validly foreclose, it also controls the rights of both the mortgagee and the mortgagor once the sale is completed.   *See* M.C.L. § 600.3204 *et seq*; *see also Senters v. Ottawa Sav. Bank, FSB*, 443 Mich. 45, 50 (1993).   In relevant part, the statute provides the mortgagor

6

six months after the sheriff's sale in which to redeem the property.   M.C.L. §

600.3240(8).   Once the redemption period following the foreclosure of a property

expires, a plaintiff's rights in, and title to, the property are extinguished, and he

loses all standing to bring claims with respect to the property.   *See Piotrowski v.*

*State Land Office Bd.*, 302 Mich. 179, 185 (1942) (mortgagors "lost all their rights,

title, and interest in and to the property at the expiration of their right of

redemption"); *see also Conlin v. Mortg. Elec. Registration Sys., Inc.*, 714 F.3d 355,

359 (6th Cir. 2013) (citing *Piotrowski*); *Overton v. Mortg. Elec. Registration Sys.*,

2009 WL 1507342 (Mich. App. May 28, 2009) ("Once the redemption period

expired, all of plaintiff's rights in and title to the property were extinguished.").[4]

Here, the redemption period expired on April 5, 2012.   Plaintiffs have not put forth

any facts that indicate that they timely attempted to redeem the Property.   Because

Plaintiffs failed to redeem the Property before the redemption period expired,

---

[4] Courts in this District are split as whether *Overton* is a "standing" -based or
"merits" -based decision.   *See Houston v. U.S. Bank Home Mortg. Wisconsin
Servicing*, 505 F. App'x 543, 548 (6th Cir. 2012) (collecting cases).   While the
Sixth Circuit has recently questioned those decisions treating *Overton* through the
standing prism, it has not done so in a published opinion.   *See id.*; *El-Seblani v.
IndyMac Mortg. Serv.*, 510 F. App'x 425, 429 (6th Cir. 2013); *Mourad v.
Homeward Residential, Inc.*, 517 F. App'x 360, 367 (6th Cir. 2013).   This Court
has consistently adhered to the former, absent a challenge to the validity of the
foreclosure sale for fraud.   *See, e.g., Sembly v. U.S. Bank Nat. Ass'n*, 2012 WL
32737, at *1-2 (E.D. Mich. Jan. 6, 2012).   However *Overton* may be properly
categorized, Plaintiffs' claim fails because they did not challenge the foreclosure
before the redemption period, failed to redeem the Property, and failed to show --
as set forth in text above -- fraud or irregularity in the foreclosure process.

Freddie Mac became vested with "all right, title and interest" in the Property by operation of law.   At that point, Plaintiffs, the former owners, lost standing to assert claims with respect to the Property.

"Michigan courts have held that once the statutory redemption period lapses, they can only entertain the setting aside of a foreclosure sale where the mortgagor has made 'a clear showing of fraud, or irregularity.'"   *Conlin*, 714 F.3d at 359 (citing *Schulthies v. Barron*, 16 Mich. App. 246 (2007)); *see also Sweet Air Investment, Inc., v. Kenney*, 275 Mich. App. 492 (2007).   As the Sixth Circuit recently instructed, "a plaintiff-mortgagor must meet this 'high standard' in order to have a foreclosure set aside after the lapse of the statutory redemption period." *Conlin*, 714 F.3d at 359-60.   "[N]ot just any type of fraud will suffice.   Rather, '[t]he misconduct must relate to the foreclosure procedure itself.'"   *Id.* at 360 (citations omitted and alteration in original).

Plaintiffs attempt to make this showing by claiming that Freddie Mac conducted the foreclosure sale, not Chase.   Therefore, Plaintiff asserts, because Chase did not assign the Mortgage and Note to Freddie Mac, a record chain of title did not exist prior to the foreclosure sale in violation of M.C.L. § 600.3204.   (Plfs' Resp., Dkt. # 24, at 8-9).   In support of this assertion, Plaintiffs only point to an affidavit accompanying the Sheriff's Deed stating that "[t]he Federal Home Loan Mortgage Corporation, their (sic) successors or assigns is the owner of the

8

indebtedness, or currently holds an interest in the indebtedness, secured by the Mortgage." (*Id.*) (citing Dkt. # 14-1, at 25). The Court is not persuaded by this argument.

As Defendant notes, Plaintiffs ignore the fact that the same affidavit also states in the preceding paragraph that "[a]s the Mortgagee under the mortgage . . . , JPMorgan Chase Bank . . . has initiated a foreclosure sale of the Mortgage . . . pursuant to the Michigan foreclosure by advertisement statute." (Dkt. # 14-1, at 25; *see also id.*, at 26 ("[S]aid mortgage is currently held by JPMorgan Chase Bank.")).[5]   More importantly, "Plaintiffs are bound by admissions in their pleading[.]" *Hughes v. Vanderbilt Univ.*, 215 F.3d 543, 549 (6th Cir. 2000). Not only do the Sheriff's Sale documents attached to Plaintiffs' Amended Complaint contradict Plaintiffs' argument, Plaintiffs' Amended Complaint expressly avers that "the foreclosure proceedings [were] commenced not by Freddie Mac . . . , but by Chase, as servicing agent." (Plfs' Am. Compl., Dkt. # 14, at ¶ 47). Under Michigan's foreclosure by advertisement statute, the "servicing agent of the

---

[5] There is no conflict between Defendant's status as mortgagee and Freddie Mac's attestation that it held an interest in the underlying indebtedness: under well-established Michigan law, "[i]t has never been necessary that the mortgage should be given directly to the beneficiaries. The security is always made in trust to secure obligations, and the trust and the beneficial interest need not be in the same hands." *Residential Funding Co., L.L.C. v. Saurman*, 490 Mich. 909, 910 (2011).

mortgage" may institute foreclosure proceedings.   M.C.L. § 600.3204(1)(d).[6]

Because Plaintiffs have failed to show that there existed a strong case of fraud or

irregularity, Plaintiffs lack standing to challenge any alleged defects in the

foreclosure.[7]

Finally, this Court rejects Plaintiffs' assertion that *Kim v. JPMorgan Chase

Bank, N.A.*, 493 Mich. 98 (2012), and *Sobh v. Bank of America*, 2013 WL 2460022

(Mich. Ct. App. June 6, 2013), "dispense with Defendant's arguments that

Plaintiffs do not have standing to challenge the purported assignment of the

Mortgage." (Plfs' Resp., Dkt. # 24, at 9).   These cases do not so broadly hold, as

Plaintiffs suggest, that all "mortgagor litigants . . . have standing to challenge

---

[6] For this reason, Plaintiffs' assertion that the Mortgage was impermissibly transferred without the Note contrary to the terms of the Mortgage is moot. (Plfs' Resp., Dkt. # 24, at 14-15).   Accordingly, Plaintiffs' reliance on *Gregory v. CitiMortgage, Inc.*, 890 F. Supp. 2d 791 (E.D. Mich. 2012), addressing in relevant part, the plaintiff's breach of contract claim based on language in a mortgage, is inapposite.

[7] Plaintiffs' Amended Complaint also claims that the Mortgage "was pooled together with a number of other loans in 2006 or 2007 . . . and made into an exotic investment . . . known as an 'asset backed security.'" (Plfs' Am. Compl., Dkt. # 14, at ¶ 54).   This "asset backed security" was subject to a "Pooling and Servicing Agreement and required mortgages to be assigned in a certain way and within a certain time period. (*Id.* at ¶¶ 54-55).   According to Plaintiffs, these conditions were not met. (*Id.* at ¶ 55).   As a Western District of Michigan Judge recently stated in another mortgage foreclosure case involving Plaintiffs' attorneys, "[t]his argument is frivolous.   Even if there is a pooling and servicing agreement, Plaintiff[s are] not a party to it and ha[ve] no standing to challenge its terms." *Hewitt v. Bank of America*, 2013 WL 3490668, at *4-5 (W.D. Mich. July 11, 2013) (Bell, J.) (citation omitted); *see also Goodwin v. CitiMorgage, Inc.*, 2013 WL 4499003 (W.D. Mich. Aug. 19, 2013) (Bell, J.) (similarly rejecting asset back security assignment theory brought by Plaintiffs' attorneys).

assignments of mortgages or lack thereof." (*Id.*). Rather, *Kim* and *Sobh* address

what happens when there are defects or irregularities in the foreclosure process:

> [D]efects or irregularities in a foreclosure proceeding result in a
> foreclosure that is voidable, not void *ab initio*. . . . In this regard, to set
> aside the foreclosure sale, plaintiffs must show that they were
> prejudiced by defendant's failure to comply with M.C.L. § 600.3204.
> To demonstrate such prejudice, they must show that they would have
> been in a better position to preserve their interest in the property
> absent defendant's noncompliance with the statute.

*Kim*, 493 Mich. at 115-16. Neither *Kim* nor *Sobh* discuss the issue of whether a

mortgagor has standing to challenge a foreclosure after the expiration of the

redemption period. Moreover, "Post-*Kim,* Michigan mortgagors seeking to set

aside a sheriff's sale under § 600.3204 will have to demonstrate prejudice (e.g.,

double liability)[.]" *Conlin*, 714 F.3d at 362. Plaintiffs have made no such

showing and contrary to their assertion (Plfs' Resp., Dkt. # 24, at 15), courts do

require plaintiffs to affirmatively plead such prejudice. *See, e.g., Ashford v. Bank*

*of America*, 2013 WL 5913411, at *4 (E.D. Mich. Oct. 31, 2013) (Zatkoff, J.);

*Pettiford v. J.P. Morgan Chase Bank, N.A.*, 2013 WL 3724788, at *4 (E.D. Mich.

July 15, 2013) (Duggan, J.); *Colbert v. Fed. Nat. Mortg. Ass'n*, 2013 WL 1629305,

at *12 (E.D. Mich. April 16, 2013) (Borman, J.); *but see Roller v. Fed Nat'l*

*Mortgage Ass'n*, 2012 WL 5828625, at *5 (E.D. Mich. June 4, 2012) (Goldsmith,

J.).[8]

        Count I fails as a matter of law.

---

[8] This Court also rejects Plaintiffs' other arguments concerning standing -- arguments that other courts have also rejected in other cases brought by Plaintiffs' attorneys:

- Even if Freddie Mac *was* the foreclosing entity, "Plaintiffs do not have standing to challenge the mortgage assignment on the grounds of fraud" because they were not a party to the assignment. *Maraulo v. CitiMortgage, Inc.*, 2013 WL 530944, at *6 (E.D. Mich. Feb. 11, 2013) (Goldsmith, J.) (citing *Livonia Prop. Holdings, LLC v. 12840-12976 Farmington Road Holdings*, 299 F. App'x 97 (6th Cir. 2010)).

- Plaintiffs' general assertion that they "fear double recovery" (Plfs' Resp., Dkt. # 24, at 15, n.7) and thus fit within the exception to the general rule that "when an obligor pleads facts indicating that the assignment may subject the obligor to the risk of having to pay the underlying debt twice" is not sufficiently pled. *See Stroud v. Bank of Am., N.A.,* 2013 WL 3582363 (E.D. Mich. July 12, 2013) (Duggan, J) (citing *Livonia Prop. Holdings*). As in *Stroud*, "Plaintiff[s did not] substantiate this fear by, for example, alleging that a second entity is attempting to collect on the underlying debt. That Plaintiff[s are] fearful of double liability does not make the risk of such liability plausible." *Id.* at *7. *See also Hewitt*, 2013 WL 3490668 at *3 n.3; *Goodwin*, 2013 WL 4499003, at *2 n.1.

- Plaintiffs' citation to *Lansing Schools Education Association v. Lansing Board of Education*, 487 Mich. 349 (2010), "for the proposition that they have standing to challenge the assignment due to a special injury or right or a substantial interest different from the citizenry at large" is inapposite. *Maraulo*, 2013 WL 530944, at *8. This case "does not affect the holding of *Livonia Properties* . . . and is of no relevance regarding the issue of whether a debtor may challenge an assignment to which it was not a party." *Id.*

**2.      Count II -- Michigan's Regulation of Collection Practices Act**

The entire set of "facts" set forth in Plaintiffs' Amended Complaint regarding their claim under Michigan's Regulation of Collection Practices Act, M.C.L. § 445.251, are contained in one paragraph:

> In addition to the foregoing, Defendants are fully aware that Plaintiffs have been represented by counsel, but nonetheless since that time have committed multiple violations of Michigan's Regulation of Collection Practices Act (the "Michigan Act"). Defendants' violations are too numerous to cite individually in this Complaint -- the details of which will be further fleshed out through discovery -- but which include but are not limited to endless collection calls by phone to Plaintiffs despite cease and desist requests, threatened foreclosure, assessed monthly late fees, and reported false and derogatory information to the credit reporting agencies. Further, Defendants made false representations that Plaintiffs committed wrongful conduct, false statements as to Defendants' standing to foreclose, and statements impermissible because of Defendants' failure to comply with Michigan foreclosure and real estate laws. In addition, Defendants continued to contact Plaintiffs directly, in an attempt to collect the alleged debt, in violation of Michigan's Act despite the fact that Defendants were aware that Plaintiffs were represented by counsel.

(Plfs' Am. Compl., Dkt. # 14, at ¶ 37). Accordingly, Plaintiffs allege seven violations:

- Communicating with Plaintiffs in a misleading or deceptive manner;

- Making an inaccurate, misleading, untrue, or deceptive statement or claim in a communication to collect a debt or concealing or not revealing the purpose of a communication when it is made in connection with collecting a debt;

13

- Misrepresenting in a communication with Plaintiffs the following: (i) the legal status of a legal action being taken or threatened, (ii) the legal rights of Defendants or Plaintiffs;

- Communicating with Plaintiffs without accurately disclosing the caller's identity;

- Communicating with Plaintiffs when Plaintiffs were actively represented by an attorney because Plaintiffs' attorney's name and address were known;

- Using a harassing, oppressive, or abusive method to collect a debt, including causing a telephone to ring or engaging a person in telephone conversation repeatedly and continuously, or at unusual times or places which are known to be inconvenient to Plaintiffs; and

- Failing to implement a procedure designed to prevent a violation by an employee.

(*Id.* at ¶ 60).

This Court now joins the various other Michigan Federal courts that have rejected nearly identical vague and conclusory allegations brought under Michigan's Regulation of Collection Practices Act by Plaintiffs' attorneys. *See Palffy v. BSI Fin. Serv., Inc.*, 2013 WL 4718931, at *3 (E.D. Mich. Sept. 3, 2013) (Cleland, J.); *Goodwin*, 2013 WL 4499003, at *5-6; *Stroud*, 2013 WL 3582363, at *9-10; *Hewitt*, 2013 WL 3490668, at *6-8; *West v. Wells Fargo Bank, N.A.*, 2013 WL 3213269, *5 (E.D. Mich. June 26, 2013) (Zatkoff, J.). In *Goodwin*, for example, Judge Bell of the Western District of Michigan reasoned as follows when dismissing a similar pleading:

14

Rule 9(b), which provides that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake," is applicable to all allegations of fraud, including allegations of fraud under the MCPA. *See Zanger v. Gulf Stream Coach, Inc.,* No. 05–72300, 2005 WL 3416466, at *10 (E.D. Mich. Dec. 13, 2005). Plaintiffs allege seven violations of the MCPA, four of which allege fraud: (1) communicating with Plaintiffs in a misleading or deceptive manner; (2) making a deceptive statement in a communication to collect a debt; (3) misrepresenting in a communication with Plaintiffs the legal status of a legal action being taken and the legal rights of Plaintiffs; and (4) communicating with Plaintiffs without accurately disclosing the caller's identity.   (Compl.¶ 176(a)-(d).)   Plaintiffs provide no details in these incredibly vague allegations. Plaintiffs do not provide the time or contents of the misrepresentations, nor do Plaintiffs provide who made the misrepresentation or when.   Indeed, beyond the recitation of general behavior the MCPA prohibits, Count X is devoid of details.

As for the alleged violations of the MCPA which do not involve fraud -- (1) communicating with Plaintiffs when Plaintiffs were actively represented by an attorney; (2) using a harassing, oppressive, or abusive method to collect a debt, including causing a telephone to ring or engaging a person in telephone conversations repeatedly and at unusual times; and (3) failing to implement a procedure designed to prevent a violation by an employee -- Plaintiffs merely quote the statute. *See* Mich. Comp. Laws § 445.252(h), (n), (q).   Beyond quoting subsections (h), (n), and (q) from the statute, Plaintiffs make no allegations regarding [defendant]'s conduct.   Even under the lower pleading standard for non-fraud claims, this pleading is woefully inadequate.   A plaintiff must provide more than "a formulaic recitation of a cause of action's elements" to survive a motion to dismiss. *Twombly,* 550 U.S. at 555; *see also Brady v. Chase Home Fin., LLC,* No. 1:11–CV–838, 2012 WL 1900606, at *10 (W.D. Mich. May 24, 2012) (Quist, J.) (dismissing a plaintiff's MCPA claim because the allegations "merely parrot certain provisions of the statute" and "fail to provide any factual 'meat' for her bare-bones claim").

*Goodwin*, 2013 WL 4499003, at \*5-6.  The same analysis applies here.  As Judge Duggan noted in *Stroud*, Plaintiffs' indication that they will "flesh[] out" the details of these violations during discovery indicates an acknowledgement by Plaintiffs that their Amended Complaint lacks the factual specificity required in this post-*Twombly/Iqbal* world.  *Stroud*, 2013 WL 3582363, at \*10 n.8; *see New Albany Tractor, Inc.*, 650 F.3d at 1051 (emphasizing that under *Twombly/Iqbal*, plaintiffs may not use the discovery vehicle to cure a deficient complaint).

Plaintiffs' Count II fails as a matter of law.

## IV. CONCLUSION

The Court is sympathetic to Plaintiffs' plight, as alleged, because they apparently put their trust in a third-party to help remedy their financial problems and to maintain possession of their home.  Plaintiffs' trust was to the detriment of pursuing other options -- options which might have resulted in outcomes other than the loss of their home and this lawsuit.  Whether Plaintiffs have causes of action to assert against Sandoval and Nationwide Consulting Group is not before this Court, but what is clear is that they have not pled adequate causes of action in this lawsuit.[9]

---

[9] It is this Court's general practice to provide a plaintiff with an opportunity to amend his Complaint when faced with a dismissal that is readily curable because slight defects should not condemn an otherwise viable complaint.  This practice need not be followed here, however, because amendment would be futile.  *See, e.g., Rose v. Hartford Underwriters Ins. Co.*, 203 F.3d 417, 420-21 (6th Cir. 2000).

For all of the foregoing reasons,

IT IS HEREBY ORDERED that Defendant's Motion to Dismiss [Dkt. # 16] is GRANTED and Plaintiffs' Amended Complaint is dismissed with prejudice.

**IT IS SO ORDERED.**

Dated:  December 16, 2013          **s/Gerald E. Rosen**
                                   **GERALD E. ROSEN**
                                   **CHIEF, U.S. DISTRICT COURT**


**I hereby certify that a copy of the foregoing document was mailed to the attorneys of record on this date, December 16, 2013, by electronic and/or ordinary mail.**

                                   **s/Julie Owens**
                                   **Case Manager, 313-234-5135**

---

In response to Defendant's motion, Plaintiffs neither hinted at additional factual allegations they could add to save their claims from dismissal nor requested an opportunity to again amend their Complaint.  Accordingly, this Court declines to provide Plaintiffs with such an opportunity.  *See, e.g., Winget v. JP Morgan Chase Bank, N.A.,* 537 F.3d 565, 572 (6th Cir. 2008) ("The district court does not abuse its discretion in failing to grant a party leave to amend where such leave is not sought.") (internal quotation marks and citations omitted); *Lewis v. Wheatley*, 528 F. App'x 466, 470 (6th Cir. 2013) (amendment is futile when, among other things, a plaintiff does not "provide[] any additional factual allegations that [it] would submit in an amended complaint").

17